

FILED

MAY 11 2018

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS SOLORZANO,<br><br>                        Petitioner,<br><br>v.<br><br>KIMBERLY HOLLAND, Warden,<br><br>                        Respondent. | Case No.:  3:16-cv-02268-AJB-KSC<br><br>**REPORT AND RECOMMENDATION RE PETITIONER'S WRIT OF HABEAS CORPUS** |

On September 7, 2016, Jesus Solorzano ("petitioner"), a state prisoner represented by counsel Carl Fabian, filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254 challenging his conviction in the San Diego County Superior Court[1] for multiple counts of forcible sex crimes. [Doc. No. 1]. The Petition raises a single claim for relief, alleging that petitioner's attorney provided ineffective assistance in violation of the right to counsel guaranteed by the Sixth Amendment. [Doc No. 1, at p. 6]. In his Traverse,[2]

---

[1] *People v. Solorzano*, SCN289128.

[2] Even though petitioner raises the insufficiency of evidence claim for the first time in his Traverse, the Court will address this issue.

petitioner also argues there was insufficient evidence to warrant his conviction for forcible sex offenses and that the California Court of Appeal erred in upholding a finding of duress and forcible rape. [Doc. No. 24, at pp. 6–7; 11–13].

This Court has reviewed the Petition [Doc. No. 1]; respondent's Answer and supporting Memorandum of Points and Authorities [Doc. No. 16]; the Lodgments submitted by respondent, including the state court record [Doc. No. 17]; and petitioner's Traverse [Doc. No. 24]. This Report and Recommendation is submitted to United States District Judge Anthony J. Battaglia pursuant to Title 28 United States Code, Section 636(b), and Civil Local Rules 72.1(d) and HC.2 of the United States District Court for the Southern District of California. For the reasons discussed below, this Court **RECOMMENDS** that the District Court **DENY** the Petition.

## I. <u>FACTUAL BACKGROUND</u>

In reviewing a federal petition for writ of habeas corpus, federal courts defer to state court findings of fact and presume them to be correct. A petitioner may rebut this presumption, but only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) (West 2006); *see also Parke v. Raley*, 506 U.S. 20, 35–36 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness). The California Court of Appeal's unpublished decision denying Mr. Solorzano's direct appeal in Case No. D064671 sets forth the following summary of the facts:

A. *Prosecution Case*

N. was the principal witness against Solorzano. She testified that the abuse began when she was 14 and Solorzano took her to an apartment in Escondido where . . . he directed her to the bedroom, told her to lie back on the bed, told her to take off her pants and her underwear, pulled her legs apart, digitally penetrated her, removed his pants, found a condom, and then penetrated her with his penis. . . . Over the course of the following two years, N. estimated that Solorzano committed sex acts on her 40 to 50 times. Most of the acts were sexual intercourse . . . when Solorzano was watching N. and her three younger siblings.

2

N. testified she felt she had to listen to her father and do what he asked. [ ] On three occasions [N.] told Solorzano she did not want to have sex with him . . . each time N. objected Solorzano promised he would stop, but he did not.

When Solorzano was abusing N., Solorzano was five feet seven inches tall and weighed about 185 pounds; N. was five feet one inch tall and weighed about 130 pounds. N. did not believe she could resist him physically. N. testified: "All the times when he was in my room having sex with me, the positions he would put me in, he was always right on top of me, really close. It's not like I could have fought him off. [ ] He had me pinned down. He would have his forearms on either side of me. He would be all over me. [ ] I was trapped. I couldn't get out."

In addition to N.'s testimony, the prosecution presented evidence of the physical examination that was performed on N., recordings of the three telephone conversations N. had with Solorzano following her disclosure of the abuse and testimony from a child abuse expert, who stated that children are often compliant with adult abusers with whom they are bonded and do not report abuse out of fear of negative consequences for the abuser as well as themselves.

B. *Defense Case*

Solorzano testified on his own behalf. He denied having any sexual contact with N. at any time. Solorzano testified he observed N. acting out sexually at times and that at one point she had asked him about birth control. With respect to the recorded telephone conversations, Solorzano testified that the recordings were incomplete; according to Solorzano, at the beginning of the calls N. threatened suicide if he did not agree with what she was saying and that he went along with what she was saying because of his fear for her well-being.

C. *Instructions*

Among other instructions, with respect to the forcible rape, foreign object and forcible oral copulation allegations, the trial court gave the jury versions of CALCRIM Nos. 1000, 1015, and 1045. These instructions, in addition to requiring that the prosecution show that the alleged sex acts were accomplished by force, violence, duress, menace or fear, repeatedly defined duress as "a direct or implied threat of force, violence, danger, or retribution

3

that would cause a reasonable person to do or submit to something that she would not do or submit to otherwise." The instructions further directed the jury that when deciding whether an act was accomplished by duress, to "consider all the circumstances, including the woman's age and her relationship to the defendant."

In addition to instructions on the forcible crimes alleged, Solorzano asked the trial court to give the jury instructions on sections 261.5, subdivision (c), 289, subdivision (h), and 288a, subdivision (b)(1), which respectively make it a misdemeanor to have sexual intercourse with a minor, sexually penetrate a person under the age of 18, or participate in oral copulation with a person under the age of 18. Solorzano's counsel argued these crimes were lesser *related* offenses of the felonies charged in the information. The prosecutor objected to the instructions proposed by Solorzano, and the trial court declined to give them.

The jury returned a verdict finding Solorzano guilty of all 21 offenses allegedly committed against N. [ ] The trial court sentenced Solorzano to a term of 114 years in state prison.

[Doc. No. 17–30, at pp. 4–8].

## II. PROCEDURAL BACKGROUND

### A. Jury Trial and Appeal in State Court

On September 20, 2013, petitioner was convicted by a jury of the following forcible sex offenses: (1) seventeen counts of rape (Cal. Pen. Code § 261, subd. (a)(2)); (2) one count of forcible penetration with a foreign object (Cal. Pen. Code § 289, subd. (a)(1)(A)); and (3) three counts of forcible oral copulation (Cal. Pen. Code § 288a, subd. (c)(2)). [Doc. No. 1, at p. 2]. The trial court sentenced petitioner to an aggregate term of 114 years in state prison, where he is currently incarcerated. [Doc. No. 1, at p. 2].

Petitioner timely appealed his conviction in the California Court of Appeal.[3] The Court of Appeal affirmed the conviction and denied petitioner's subsequent Petition for

---

[3] *People v. Solorzano*, D064671

4

Rehearing on April 1, 2015. [Doc. No. 17–30; Doc. No. 17–32]. In his direct appeal, petitioner argued that the trial court erred in failing to instruct the jury *sua sponte* on lesser included non-forcible sex offenses. [Doc. No. 2, at p. 3]. Petitioner sought further direct review by the California Supreme Court,[4] which denied review of petitioner's trial court conviction on June 10, 2015. [Doc. No. 17–34].

Petitioner contends that he did not raise his current claim for ineffective assistance of counsel on the direct appeal because the claim would have required reference to matters outside the record. [Doc. No. 1, at p. 7].

## B. Habeas Petition in State Court

On September 7, 2016, petitioner filed a Petition for Writ of Habeas Corpus in the California Supreme Court[5], asserting a Constitutional claim for ineffective assistance of counsel. The California Supreme Court denied petitioner's state habeas petition on June 21, 2017. [Doc. No. 12, at pp. 1–2].

## C. Habeas Petition in Federal Court

Also on September 7, 2016, petitioner filed the operative federal habeas Petition in the Southern District of California pursuant to 28 U.S.C. § 2254. [Doc. No. 1]. Petitioner simultaneously applied for a stay of proceedings in the federal court pending resolution of his petition before the California Supreme Court. [Doc. No. 2, at pp. 1–2]. The California Supreme Court's denial of the state habeas petition on June 21, 2017 rendered moot the need for this Court to rule on petitioner's motion to stay proceedings. [Doc. No. 12, at pp. 1–2 (denying petitioner's Application for Stay and Abeyance of the federal Petition as moot)].

Petitioner's operative federal habeas Petition contains one unexhausted claim, that "[p]etitioner was denied his Sixth Amendment right to counsel when his trial attorney

---

[4] *People v. Solorzano*, S225868
[5] *Solorzano (Jesus) on H.C.*, S237054.

5

1  misdirected the trial court on the law and his trial was unfair and violated Due Process and
2  the 14th Amendment." [Doc. No. 1, at p. 6].
3       On September 11, 2017, after being granted an extension of time, respondent filed
4  an Answer. [Doc. No. 16]. Petitioner filed a Traverse on February 9, 2018, after being
5  granted motions for extensions of time. [Doc. No. 24].

6  **III.  STANDARD OF REVIEW**

7       Federal habeas corpus relief is available only to those who are in custody in violation
8  of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). "A federal court
9  may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465
10 U.S. 37, 41 (1984). "[A] mere error of state law is not a denial of due process." *Engle v.*
11 *Isaac*, 456 U.S. 107, 121 n. 21 (1982) (internal quotations omitted).
12       This Petition is governed by the provisions of the Antiterrorism and Effective Death
13 Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997). Under
14 AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the
15 merits by the state court unless that adjudication: (1) resulted in a decision that was contrary
16 to, or involved an unreasonable application of, clearly established Federal law, as
17 determined by the Supreme Court of the United States; or (2) resulted in a decision that
18 was based on an unreasonable determination of the facts in light of the evidence presented
19 at the State court proceedings. 28 U.S.C. § 2254(d)(1)&(2); *Early v. Packer*, 537 U.S. 3,
20 9 (2002).
21       For purposes of 28 U.S.C. § 2254(d)(1), "clearly established Federal law" means
22 "the governing legal principle or principles set forth by the Supreme Court at the time the
23 state court renders its decision." *Lockyear v. Andrade*, 538 U.S. 63, 71–72 (2003).
24 Therefore, a lack of controlling Supreme Court precedent can preclude habeas corpus
25 relief. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008).
26       In deciding a state prisoner's habeas petition under AEDPA, a federal court applies
27 a highly deferential standard of review, inquiring only whether the state court's decision
28 was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003). "[A]n

unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). To be objectively reasonable, a state court's decision need not specifically cite or rely on Supreme Court precedent. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]," the state court's decision will not be "contrary to clearly established Federal law." *Early*, 537 U.S. at 8.

AEDPA "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation and quotations omitted). Federal habeas relief cannot be granted simply because a reviewing court concludes the state court decision is erroneous or incorrect based on its own independent judgment. *Id.* Habeas relief is only available under section 2254(d)(1) when "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with Supreme Court precedents." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The AEDPA standard is "difficult to meet." *Id.* at 102.

In addition, review under section 2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). When there is no reasoned decision from a state's highest court, a federal court "looks through" to the "last reasoned state-court opinion" and presumes this provides the basis for the higher court's denial. *Ylst v. Nunnemaker*, 501 U.S. 797, 805–06 (1991). AEDPA requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007).

Here, the California Supreme Court denied the Petition without comment and therefore the California Court of Appeal's unpublished opinion is the "last reasoned state court opinion" in the docket. *Ylst*, 501 U.S. at 805–06. This Court will look to the California Court of Appeal's decision when evaluating petitioner's claim for relief under AEDPA's standards.

## IV. **DISCUSSION**

### A. Ineffective Assistance of Counsel Claim

## 1. Legal Standard

*Strickland v. Washington* sets forth a clearly established Supreme Court standard for evaluating ineffective assistance of counsel ("IAC") claims. *See Strickland v. Washington*, 466 U.S. 668 (1984); *Baylor v. Estelle*, 94 F.3d 1321, 1323 (9th Cir. 1996) ("*Strickland* . . . has long been clearly established Federal law determined by the Supreme Court of the United States."). Under AEDPA, the primary issue is whether the state court adjudication of the *Strickland* claims was objectively reasonable. *Schriro*, 550 U.S. at 473. To prevail on an IAC claim under *Strickland*, a petitioner must show (1) the representation provided fell below an objective standard of reasonableness; and (2) counsel's error(s) prejudiced the outcome of the case. *Strickland*, 466 U.S. at 687–88, 694. Unless a defendant makes both showings, it cannot be said that the conviction resulted from "a breakdown in the adversary process" that renders the result unreliable. *Id.* at 687.

Under the first prong of a *Strickland* analysis, courts evaluate whether petitioner received reasonably effective assistance from their counsel. *See United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995). Petitioner bears the burden to show that counsel's performance was not reasonably effective. *Strickland*, 466 U.S. at 689–90. To do so, petitioner must identify acts or omissions inconsistent with reasonable professional judgment under the circumstances. *Id.* The Supreme Court has emphasized that the purpose of the Sixth Amendment's effective assistance guarantee is not to improve the quality of legal representation, but rather simply ensures "that criminal defendants receive a fair trial." *Id.* at 689. Counsel's decisions are given "a heavy measure of deference," both to avoid discouraging defense counsel from accepting assigned cases and to avoid undermining trust between the attorney and the client. *Id.* at 690.

Prong two of *Strickland* requires petitioner to show that an error by counsel was outcome determinative. *Id.* at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). Thus, merely deeming an error professionally unreasonable is insufficient to set aside the judgment in a criminal proceeding. *Id.* at 691.

1    Finally, even if petitioner can satisfy both of the *Strickland* prongs, AEDPA requires
2    that a federal court find the state court's conclusions are objectively unreasonable. *See*
3    *Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court
4    believes the state court's determination was incorrect but whether that determination was
5    unreasonable—a substantially higher threshold."). A federal court may not "issue the writ
6    simply because that court concludes in its independent judgment that the state-court
7    decision applied *Strickland* incorrectly." *Woodford*, 537 U.S. at 24. It is petitioner's
8    burden to show the state court applied *Strickland* to the facts of his case in an objectively
9    unreasonable manner. *Id.* at 25.

10                                    **2.    Analysis**

11        The Court does not agree that the Court of Appeal's decision was contrary to
12   established Supreme Court precedent or based on an unreasonable determination of the
13   facts. *See* 28 U.S.C. § 2254(d); *Early*, 537 U.S. at 9 ("A state-court decision is contrary to
14   our clearly established precedents if it applies a rule that contradicts the governing law set
15   forth in our cases or if it confronts a set of facts that are materially indistinguishable from
16   a decision of this Court and nevertheless arrives at a result different from our precedent")
17   (internal quotations and citations omitted). Applying the first prong of the *Strickland*
18   analysis, petitioner did not meet his burden to show that counsel's performance fell below
19   an objective standard of reasonableness. Further, under the second prong of *Strickland*,
20   petitioner did not adequately prove that the outcome of the proceedings would have been
21   different but for the erroneous instructions requested by his attorney. Next, applying
22   AEDPA deference, this Court finds that the state court determinations were objectively
23   reasonable and not in conflict with Supreme Court precedent. *Harrington*, 562 U.S. at 101.
24   Accordingly, the Petition does not warrant habeas relief under 28 U.S.C. § 2254(d).

25        Petitioner argues his trial counsel erroneously requested a jury instruction for lesser
26   *related* offenses but not lesser *included* offenses ("LIOs"), and that this error caused
27   counsel's performance to fall below the objective standard of reasonableness required by
28   *Strickland*'s first prong. In the direct appeal, petitioner argued that the trial court had a *sua*

                                               9

*sponte* duty to instruct on LIOs.[6]  Petitioner contends that the lesser related offense instruction may be denied—and was denied—upon objection by the prosecution, whereas the LIO instruction cannot be denied by the prosecutor's objection. This failure by counsel, petitioner contends, deprived him of an opportunity for a lesser sentence. Petitioner alleges that counsel incorrectly advised the court and "misdirect[ed] the trial court on the law" by failing to make a proper request for instructions on LIOs, and that this failure deprived him of his Sixth Amendment right to effective counsel. [Doc. No. 1 at 4].

The California Court of Appeal did not directly address whether the performance of petitioner's counsel was objectively unreasonable, because the Court of Appeal found that the LIO instructions were not required.  Under California law, the trial court must give LIO instructions on its own motion if a reasonable probability of conviction for the lesser, but not the greater offense exists.  In the view of the Court of Appeal, the evidence presented did not raise a real probability that the jury would have convicted on the lesser, but not greater, offenses. [Doc. No. 17–30. at pp. 12–13].

This Court finds that in light of the Court of Appeal's determination that the LIO instructions were not required, counsel's error does not rise to the level of a Constitutional violation.  Proving professionally unreasonable conduct under Supreme Court precedent and the Sixth Amendment is a necessarily high bar.  The Supreme Court has recognized the inherent difficulties in evaluating counsel's performance, and dictates that Sixth Amendment claims must be mindful of the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689–90 ("Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.").  Whether petitioner's counsel misspoke or failed to understand the difference between a lesser related

---

[6] In petitioner's direct appeal he claimed that the trial court was to blame for not giving the LIO instruction *sua sponte*.  In his federal habeas Petition, petitioner shifts the blame to his trial counsel for failing to properly request the LIO instruction. However, omission of this instruction would have the same outcome, whether the court or counsel were responsible, and the Court of Appeal reasonably decided that this error was not prejudicial to the verdict.

versus lesser included offense request made no difference. The Court of Appeal determined the LIO instruction was not necessary as a matter of California law, and it was not objectively unreasonable for the Court of Appeal to so conclude. As such, petitioner does not rebut the presumption of reasonably effective assistance under the first prong of *Strickland*.

The second prong of *Strickland* requires petitioner to show that counsel's errors prejudiced the outcome of the case. Petitioner argues that the LIO instruction was warranted because the evidence did not support a verdict of forcible rape.[7] [Doc. No. 1, at p. 6]. Petitioner contends that had the instruction been given, there is a "reasonable chance" that result of the proceeding would have been different. [Doc. 17–33, at p. 16].

As stated, *supra*, the Court of Appeal concluded that the omission of LIO instructions did not prejudice the outcome. [Doc. No. 17–30, at p. 18]. The Court of Appeal found that the trial court's failure to give LIO instructions was nonprejudicial under the *Watson* standard, which states that a conviction for the charged offense may be reversed only if, after an examination of all the evidence and the entire cause, it appears "reasonably probable" that the defendant would have obtained a more favorable outcome had the error not occurred. *See People v. Watson*, 46 Cal. 2d 818, 836 (1956). The Court of Appeal concluded, "we do not believe it is probable that had lesser included offense instructions been given, the jury would have returned a more favorable verdict to Solorzano." [Doc. No. 17–30, p. 18]. This Court agrees. The second prong of *Strickland*, similar to *Watson*, asks if the alleged error by counsel proved outcome determinative. Here, petitioner has not shown a reasonable probability that the outcome of the case would have been different but for counsel's errors. Petitioner argued at trial that the prosecution had overreached in charging forcible sex crimes, and further argued that N.'s acquiescence was a form of consent. [Doc. No. 16-1, p. 15]. The jury rejected petitioner's claims that the sex acts were not forcible, believing N.'s version of events rather than petitioner's; as such, there is no

---

[7] The issue of insufficient evidence to support the conviction for forcible rape is addressed below. *See* pp. 12-17.

11

reasonable probability that the jury would have convicted on lesser sex crimes involving no use of force. [*See id.* at p. 16]. In the view of this Court and upon review of the record and evidence presented, petitioner has not sufficiently shown that he had a reasonable probability of obtaining a more favorable result at trial, absent the error of his counsel.

Finally, under AEDPA, even if this Court found a *Strickland* violation, it must still assess whether the conclusion of the Court of Appeal was objectively reasonable. On the record presented, the Court of Appeal's application of *Watson* and finding of harmless error was objectively reasonable in light of the record and evidence presented, and it was not contrary to clearly established Supreme Court precedent. Accordingly, it is **RECOMMENDED** that the petition for habeas relief on this ground be **DENIED**.

## B. Insufficiency of Evidence Claim

Petitioner argues that his conviction for forcible sex crimes was erroneous because, in his view, insufficient evidence was presented at trial to prove forceful conduct or duress. [Doc. No. 1 at p. 6]. Specifically, he contends there was "no evidence of any implied or express threats . . . [and] there was a vast amount of evidence that the sex acts testified to . . . were committed under non-forcible circumstances." [*Id.*]. Petitioner contends there was insufficient evidence for the jury to make a finding of duress, which is defined as "the use of a direct or implied threat of force, violence, danger, hardship, or retribution sufficient to cause a reasonable person to do [or submit to] something that he or she would not otherwise do [or submit to]." *See People v. Soto*, 51 Cal.4th 229, 246, n. 9 (2011).

///

///

### 1. Legal Standard

The California Supreme Court denied petitioner's request for appeal without comment or citation to authority. [Doc. No. 17–34]. As stated above, When the state supreme court gives such a denial, this Court must "look through" the silent denial to the last reasoned decision from the next highest court to determine the grounds for relief. *Ylst,*

1  501 U.S. at 804 n.3. In this case, the Court looks to the decision from the California Court
2  of Appeal. [Doc. No. 17–30].

3      The Due Process Clause of the Fourteenth Amendment protects defendants from
4  convictions "except upon proof beyond a reasonable doubt of every fact necessary to
5  constitute the crime with which he was charged." *In re Winship*, 397 U.S. 358, 364 (1970).
6  During habeas review, a petitioner alleging insufficiency of the evidence may obtain relief
7  only if it is "found that upon the record evidence adduced at the trial no rational trier of
8  fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443
9  U.S. 307, 324 (1979). "[T]he relevant question is whether, after viewing the evidence in
10 the light most favorable to the prosecution, *any* rational trier of fact could have found the
11 essential elements of the crime beyond a reasonable doubt." *Id.* at 319. In essence, reversal
12 on an insufficiency of evidence claim is "a determination that the government's case
13 against the defendant was so lacking that the trial court should have entered a judgment of
14 acquittal." *McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (quoting *Lockhart v. Nelson*,
15 488 U.S. 33, 39 (1988)) (internal citations omitted).

16     The jury bears the responsibility of deciding what conclusions should be drawn
17 from the evidence admitted at trial. *See Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per
18 curiam*). A reviewing court may set aside the jury's verdict on grounds of insufficient
19 evidence "*only if* no rational trier of fact could have agreed with the jury." *Id.* (emphasis
20 added). "The reviewing court must respect the exclusive province of the fact finder to
21 determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable
22 inferences from proven facts" by assuming that the jury resolved all conflicts in support of
23 the verdict. *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996); *Walters v.
24 Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995). If the record supports competing inferences,
25 the court must presume that the trier of fact resolved any such competing inferences in
26 favor of the prosecution, and must defer to that resolution. *Jackson*, 443 U.S. at 326. The
27 court applies the standard to the applicable state law that defines the elements of the crime.
28 *Id.* at 324 n. 16; *see also Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir. 2004) (*en banc*).

A further "layer of deference" exists under AEDPA. *Juan H. v. Allen*, 408 F.3d 1262 (9th Cir. 2005) (as amended). Habeas relief is not warranted unless "the state court's application of the *Jackson* standard [was] objectively unreasonable." *Id.* at 1274-75 n. 13 (internal citations omitted); *see also Cavazos*, 565 U.S. at 2 ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'") (internal citations omitted).

## 2. Analysis

The California Court of Appeal neither deemed the jury's conclusion one with which no rational trier of fact could agree nor applied a standard contrary to Supreme Court precedent. *See Cavazos,* 565 U.S. at 2.

California Penal Code §§ 261; 288a; and 289 define crimes for rape, oral copulation, and penetration with a foreign object, each of which includes certain subdivisions providing an additional penalty if the crime is committed with the use of, *inter alia*, force, duress or "fear of immediate and unlawful bodily injury on the victim." Duress involves psychological coercion stemming from direct or implied threats of force, violence, danger, hardship, or retribution. *See People v. Senior*, 3 Cal. App. 4th 765, 775 (1992). Courts consider the totality of the circumstances when appraising the existence of duress, including the age of the victim, the familial relationship between the victim and the perpetrator, and the disparity in size between the victim and the perpetrator. *People v. Leal*, 33 Cal. 4th 999, 1004–05 (2004); *People v. Cochran*, 103 Cal. App. 4th 8, 14 (2002) (disapproved on other grounds in *People v. Soto*, 51 Cal. App. 4th 8, 13 (2002)). In *Cochran*, the court stated that "the very nature of duress is psychological coercion." 103 Cal. App. 4th, at 15 (finding that a threat of adverse consequences was sufficient to constitute a threat of retribution in a parent/child relationship with a young victim).

Petitioner asserts that the Court of Appeal erred in upholding petitioner's convictions for forcible versions of the crimes charged under a duress theory. Petitioner contends that

14

the forcible crimes were unsupported by N.'s testimony and asserts "a theory of a forcible sex act accomplished by duress must be supported by a showing of an express or implied threat," which he claims was not sufficiently shown at trial. For this reason, Petitioner argues the Court of Appeal made an unreasonable determination in light of the facts. [Doc. No. 24 at p. 10–14]. Petitioner points to N.'s testimony as giving "numerous reasons" other than duress why she acquiesced to the sex acts. [*Id.* at p. 13]. N. testified she was trying to protect the family financially by not exposing her father, that she loved petitioner and did not want to lose him, and that she kept silent in an effort to protect her siblings. [*Id.*]

The California Court of Appeal was unconvinced by the argument that the N.'s perceived acquiescence precluded a finding that the crime was forcible in nature. [Doc. No. 17–30, at p. 13]. The Court of Appeal determined, however, that forcible sex acts may occur "notwithstanding the victim's unwillingness or inability to physically resist the defendant." [*Id.*]; *See People. v. Griffin*, 33 Cal.4th 1015, 1024–25 (2004). The Court of Appeal held sufficient evidence existed to affirm Solorzano's jury conviction, explaining that "Solorzano's role as [N.'s] father, his relative size and strength, and the physical control he exerted over her before and during the sex acts provide ample evidence of both the psychological and physical coercion that is sufficient to establish duress." [Doc. No. 17–30, at p. 15]. The Court of Appeal pointed to "Solorzano's lack of concern for his daughter's bleeding" and his repeated performance of sex acts on her in close proximity to her sisters as "unmistakable and powerful demonstrations to N. of the power he exercised over her and other members of the family." [*Id.* at p. 16]. The Court of Appeal determined that the record contained sufficient evidence upon which a reasonable trier of fact could conclude that N. participated in sexual acts to which she would otherwise not have consented because of "a profound abuse of [parental] power." [*Id.*].

Upon review of the record, this Court finds that the Court of Appeal was not objectively unreasonable when it upheld petitioner's conviction for the forcible versions of the crimes charged.

At the time when the offenses began, N. was fourteen years old and faced repeated sexual misconduct by petitioner, her father and caretaker. N. testified that she felt she had to listen to her father and do what he asked. N. did not report the abuse because she, her mother, and her siblings depended on her father financially and for support. [*Id.*]. N. testified that "whenever he was on top of me . . . I wouldn't be able to get up if I really wanted to. He had me pinned down. . . I just – I was trapped. I couldn't get out." [*Id.* at p. 6]. Not only was petitioner larger and stronger than N., but N. also clearly testified that petitioner used the size discrepancy to his advantage to pin her underneath him, ensure she could not escape, and impress that reality and his authority upon her. *See United States v. Espinoza-Morales*, 621 F.3d 1141, 1147 (9th Cir. 2010) (applying a duress theory to determine appropriateness of enhanced sentencing when defendants did not use or threaten use of "violent physical force"). The father-daughter relationship, plus the fact that the majority of the sex acts happened in the family home when N.'s siblings were present, permit a reasonable inference of psychological coercion and implied duress. For example, N. explained that she remained silent to protect her siblings, from which a rational juror could conclude that she feared the harm that might come to her if she refused or resisted, as well as harm that could befall her siblings. In this case, a rational trier of fact could have found—and indeed did find—that N.'s acquiescence was due at least in part to an implied threat of danger or hardship. *See id.* at 324.

Supreme Court precedent is clear that habeas relief is available when the record shows no rational trier of fact could have found guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 324. When the evidence and inconsistencies in testimony give rise to competing inferences, the Court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326. It was not objectively unreasonable for the California Court of Appeal to conclude there was sufficient evidence from which a rational juror could infer duress and convict petitioner for forcible sex offenses charged. *See* 28 U.S.C. § 2254; *Jackson*, 443 U.S. at 319. The question of duress under California law is

not always clear cut, and while at times the record suggests competing inferences, the Court of Appeal reasonably concluded the conviction by the jury was rational on the record before it. Therefore, this Court has not identified any violation of the AEDPA standard of review upon a careful inspection of the record.

Accordingly, it is **RECOMMENDED** that the Petition for habeas relief on this ground be **DENIED**.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

## CONCLUSION and RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Anthony J. Battaglia under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. For the reasons stated above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: 1) approving and

adopting this Report and Recommendation; and 2) directing that Judgment be entered **DENYING** the Petition for Writ of Habeas Corpus.

**IT IS HEREBY ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **Thirty (30) Days** from the date this Report and Recommendation is filed. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: May *10*, 2018

Hon. Karen S. Crawford
United States Magistrate Judge